T. D. COLLINS ET AL. v. A. C. HOUSTON.

| 138 | 481 |
|-----|-----|
| 26 SC | °323 |
| 138 | 481 |
| 214 | ° 17 |

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF ARMSTRONG COUNTY.

Argued October 14, 1890—Decided January 5, 1891.

(*a*) Plaintiffs brought replevin, for timber in the possession of the defend-
ant as the assignee for creditors of Wilkins, to whom the plaintiffs had
sold it before the assignment, with the condition, as alleged, that the
title was not to pass till the purchase money was paid. Under the plea
of non-cepit and property, the defendant asserted that the sale was ab-
solute :

1. In such case, the plaintiffs were entitled to and received the proper in-
struction that, as the defendant was the direct representative of Wilkins,
his assignor, standing in his shoes, as between the plaintiffs and the de-
fendant and creditors of the assignor claiming through the assignee,
the conditional sale if found to be as claimed was valid.

2. There being evidence that, shortly after the time of the sale alleged, the
vendee removed the plaintiffs' lines from the timber, substituted his
own, and tabbed and left the plaintiffs' lines at the railroad station for
shipment to them, it was not error to submit to the jury whether there
was notice to the plaintiffs that their timber had been appropriated by
the vendee to his own uses.

3. The first agreement as to the sale being by parol, and the purchase
money ascertained by a subsequent measurement, when a memorandum
and a receipt in writing were made and passed, indicating the terms of
sale, it was correctly submitted to the jury to determine on all the evi-
dence in the cause, verbal and written, what the real contract between
the parties was.

4. There being evidence that the plaintiffs, present at a creditors' meeting
before which was laid the inventory of the assigned estate including the
timber, did not then assert their continuing title, the court properly re-
fused to instruct that there was an estoppel, but left to the jury to say
how far the facts tended to rebut the plaintiffs' allegations.

5. The timber in dispute having been delivered to the plaintiffs under the
writ, it was not error to instruct the jury that if they found for the de-
fendant, he was entitled to a return of the property replevied and dam-
ages for its detention, the measure of which would be the interest on
the value of the timber while it was out of his possession.

6. Where an objection is made to an offer of the testimony of a witness,
and the offer is refused by the court, but the witness immediately there-
after is examined, and testifies without limitation to everything relating
to the subject upon which the offer was made, the refusal of the offer
works no harm, and an assignment of error thereto is without merit.

VOL. CXXXVIII—31

Statement of Facts.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 33 October Term 1890, Sup. Ct.; court below, No. 67
December Term 1887, C. P.

On September 21, 1887, T. D. Collins, William Dickey, E.
H. Darrah, W. G. McCain and others, trading as Collins, Mc-
Cain & Co., brought replevin against A. C. Houston, assignee
for creditors of G. W. Wilkins, for a lot of timber, part in raft
and part in loose logs in Peart's eddy. The property was re-
plevied and delivered to the plaintiffs on the usual bond.
The defendant then pleaded, non-cepit and property.

At the trial on December 11, 1889, it was made to appear
that in April, 1887, the plaintiffs, who were in the timber busi-
ness in Forest county, sold to G. W. Wilkins, running a saw-
mill and boat yard at Peart's eddy on the Allegheny river
in Armstrong county, a large lot of timber in rafts and logs.
The bargain for the sale of the timber was made between Mr.
Dickey, of the plaintiffs' firm, and Mr. Wilkins, at Pittsburgh.
The timber was landed at Peart's eddy soon afterward, and on
April 29, 1887, Mr. Darrah of plaintiffs' firm, assisted in the
measurements and had what was alleged to be a settlement
with Wilkins for the timber.

On the part of the plaintiffs, it was contended on the trial
that the sale was conditional; that, under the contract as made
between Mr. Dickey and Mr. Wilkins, the possession and title
to the timber was not to pass to the purchaser until the con-
tract price was paid. It was claimed, however, on the part of
the defendant, that the sale of the timber was absolute; and,
as written evidence thereof, he put before the jury a memoran-
dum of the alleged settlement made with Mr. Darrah, dated
April 29, 1887, and entered in Darrah's pass-book obtained on
call, and also a written receipt of Mr. Darrah, of the same date,
the memorandum and the receipt appearing at length in the
opinion of the Supreme Court.

The defendant adduced evidence to prove, in addition, that,
a few days after said alleged settlement, Madison Hooks, his
river man, took the plaintiffs' lines from the timber, and put
Wilkins's lines thereon; and by R. R. McGregor, that the latter
carried the plaintiffs' lines to the railroad station and tabbed

them to be shipped to the plaintiffs; also, that the timber was afterwards moved by Mr. Wilkins to the place his own timber was kept, part of it used up by him as it was needed, and that plaintiffs, as either of them passed the point where the timber lay, had a plain view of what was being done with it.

It was shown also by the defendant, that, Mr. Wilkins having made the assignment for the benefit of creditors on August 20, 1887, the timber appraised as the first item in the inventory filed was the timber in controversy; that, at a creditors' meeting held on August 31, 1887, on business relating to the assignment, and attended by Mr. Dickey of the plaintiffs' firm, the inventory was laid before the meeting, and the plaintiffs' firm name headed a list of creditors' claims made out at the meeting, their claim being stated at $10,500; and that no claim was made by plaintiffs that the sale of the timber was otherwise than absolute, until the writ of replevin in this case was issued.

In the plaintiffs' rebuttal case, E. H. Darrah was called, and testified that he was one of the plaintiffs' firm:

Mr. Jenks: Q. State what you know with reference to this bargain that was made with Wilkins for this lumber, and all you know about it.

Objected to.

By the court: Objection sustained; he must refer to what he knows about it, with reference to his conversation with Wilkins; exception.[8]

Mr. Jenks: State what you know concerning this transaction and the bargain with Wilkins with reference to this lumber.

Mr. Patton: We object to any part, as to any conversation the witness may have had with Wilkins.

Mr. Jenks: We want the whole question answered, or want it excluded.

By the court: Very well, we will exclude it; exception.[9]

The witness was then examined as to his conversation with Wilkins on April 29, 1887, at the time of the alleged settlement.

At the close of the testimony, the court, NEALE, P. J., charged the jury in part as follows:

Right here, we may say to you, that as the assignee of Wilkins, the defendant is the direct representative of Wilkins. He stands, as it were, in Wilkins's shoes; and we may say,

further, which we are really requested to do in one of the points, that the remedy against him is the same, and the rights of Houston are the same, as would be the remedies and rights with respect to Wilkins. They stand together; he, representing Wilkins, is subject to the like questions that Mr. Wilkins would be with respect to this property. . . . .

—After reviewing the testimony at some length, and calling attention to the fact that at the creditors' meeting on August 31, 1887, no claim was made that the sale of the timber was conditional, and to the explanation thereof on the trial, the court proceeded:

[Now, these are facts for you to take into consideration with reference to the right that the plaintiffs set up to replevy this timber. Did they show by any failure to make claim; that is, that would satisfy your minds, that they did not have a claim? It is a familiar principle of law that a man who has a right, and does not assert that right at a time when he ought to, is not allowed to assert it at a time when he might want to.] [5] Whether that applies here or not, it will be for you, under all the evidence, to say. Mr. Dickey came down to Wilkins's Mill with Carrier, and he came to the meeting on August 31st, and there is no evidence that he made known to anybody at that time, this claim. He does not say so himself, and there is no evidence that at that time he made any assertion of claim. On the contrary, he put in a claim that might be inconsistent with such claim; namely, a claim for the amount of $10,500, which, if this balance of 34,000 feet of timber belonged to him and would not be included as a debt of Wilkins to him, would be about $5,000 in excess of their rightful claim. That is for the jury to consider. . . . .

[Now, there is no evidence that from the 29th of April until the 20th or 22d of August, either of these parties were there to see whether their timber had been used, whether it was still tied with their ropes; although the testimony of Mr. Wilkins is that the ropes of these plaintiffs were taken off the rafts and sent back, I believe he says that; and you have the testimony of Madison Hooks that they were taken off the raft and taken up to the station and tabbed. His testimony goes no further than that. Were they sent home? If they were, that would be some evidence that the rafts, so far as the ropes were con-

Charge of Court below.

cerned, had undergone some change; that the timber was either being used or a change had been made in the location, or else that they had been tied with new or other ropes. It will be for you to say, if that is the fact, because all of this is for the jury, whether that would have been sufficient evidence to have put these plaintiffs upon notice, if the ropes were sent home, and made it a duty upon them to have come down, as careful men, to see whether their timber was being used, or appropriated or disposed of by Mr. Wilkins. But they were not bound to do so, if that was the contract. We are simply treating that as one of the elements of this case, as affecting them with notice, and affecting them with the duty of looking after their own interests.] [2]

[This is one of the leading grounds upon which the plaintiffs seek to recover in this case; because, if there was no such conditional contract as they set up, then there was nothing to hinder, nothing to prevent Wilkins from using this timber as he saw proper. I mean there was no legal restraint upon him in using the timber as he saw proper. Even, as we have been requested to instruct, if there was such a conditional contract existing between the two parties, although binding upon the parties themselves as to themselves, it would not be binding as such on other creditors or innocent purchasers of the property. This is one ground upon which the plaintiffs claim the right to recover in this case.] [1]

The other is, that at the time of the visit of Mr. Darrah to Wilkins on April 29, 1887, Wilkins there made representations to Darrah calculated to mislead him and of such a character as the law would regard as fraudulent. What we know by fraud, is where one by a contract or representations undertakes or attempts to deceive and cheat another; takes undue or improper advantage of him. It is necessary for you to consider, in this aspect, what the character was in reference to that position of the plaintiffs in this case, because if there was a fraud perpetrated upon Darrah at the time, and that led to the execution of the contract and the delivery of the timber, and Darrah relied upon that, then the contract was void as to Darrah and he would not be bound by it or held to it, he representing the plaintiffs, unless this was something occurring subsequent to the actual contract between the parties. If it occurred after

Charge of Court below.

there was an actual contract between the parties, and both parties were bound by the contract, then the subsequent declarations of Wilkins would not effect it and would not avoid it. If he had made the declarations subsequent to that, and there had been an actual delivery of the timber or actual sale and it was completed, those declarations if fraudulent, would not bind Wilkins, nor them. It would be, so far as that is concerned, however flagrant the declarations may have been, innocent, as affecting the status of the parties with regard to their contract. If that contract had been completed and was an executed contract between the parties, or even if it was executory between the parties, it might be deemed so.* . . . . .

[It is alleged, on the part of the defendant, that there was an actual contract between these parties; that this memorandum itself purports to be a contract between the parties. Now, as to the facts, you will have to ascertain them. Was that treated as a contract between the parties, without their having any other contract? There may have been more than this, or there may not, with reference to this particular transaction; it will be for you to say. It is in writing. It has reference to what was done. It refers to an actual sale, and speaks of it as an actual sale further on, but it does not specify that there was any condition attached to that sale. It may not have been thought of, by either of the parties, to have attached any such reference to the conditional sale, or it might imply that that is all that was done in the contract. That is for the jury. If it was a contract, which is an agreement entered into for a consideration between two parties to do or not to do a certain thing, having reference to the assent of two persons concurring or agreeing to a certain matter, either the sale of property or some service one to the other; or, it may be the contract is complete when one agrees to do for another a certain act, or agrees to deliver to another a certain article for a stipulated or valuable consideration. Now, it will be for you to say, under all the evidence, whether this was the whole contract as made between the parties. If it was all the contract, then we have to agree with what we have been requested to charge, that it

---

* The fraud charged was in certain alleged representations by Mr. Wilkins to Mr. Darrah as to his ownership of certain real estate and its value.

Charge of Court below.

could not be explained by outside evidence, if that was the entire contract, unless it were shown that the other part of it was omitted by fraud or accident or mistake. But, if this is not the contract, then the evidence of what occurred contemporaneously to the making of this paper is competent evidence, and you have a right to give it your consideration. You also take into consideration, what was the duty, if there was any duty, upon these parties to reduce the whole of an important contract of that character to writing, when they had pen, ink and paper before them.] [3] . . . . .

We would also say with reference to the contract, as affecting that question of a conditional sale, that you must find that it was agreed to by both parties. It will not do to find that one party said, you may have the timber and keep it or hold it, but it must be assented to. It must be a completed contract, so far as it goes, by the assent of the other party. Whether that was so in this transaction, it will be for you to say from the testimony. If Wilkins simply said, "you can keep the timber until it is paid for," unless that is made a complete contract between the two and agreed to as between the two, it may have been a mere offer, and unless accepted as an offer, it would not affect this case with reference to the conditional sale. It will be for you under all the evidence to say whether this was carried out that far or not.

We have been requested to instruct you on certain legal propositions on behalf of both parties. First, the plaintiffs ask us to say:

1. That the rights of the assignee, A. C. Houston, in this case, are the same as those of G. W. Wilkins, his assignor; and if, under the evidence in this case, you find that, as between the plaintiffs and G. W. Wilkins, the title to the property was in the plaintiffs, your verdict should be in their favor.

Answer: That point is affirmed.

2. That if the jury find from the evidence that the bargain between the plaintiffs and G. W. Wilkins for the timber was that the timber was to remain the property of the plaintiffs until the notes were paid, that in pursuance thereof they ran the timber down in the vicinity of Wilkins's mill and there left it tied with their own lines, and the notes were unpaid, the right of property in the timber at the time of bringing this suit

was in the plaintiffs; if the jury so find, their verdict should be in favor of the plaintiffs.

Answer: As to the fact of the timber being tied with their own lines, that is for the jury; this point is affirmed.

On the part of the defendant, we are asked to instruct you as follows:

1. If the jury believe from the evidence that the contract concerning the timber in dispute was reduced to writing on April 29, 1887, and that nothing was omitted therefrom by fraud, accident or mistake, said writing is the best evidence of the contract between the parties.

Answer: That is affirmed, if the jury find the fact that there was a written contract.[4]

2. If the jury believe from the evidence that E. H. Darrah and Wm. Dickey attended the meeting of the creditors, on August 31, 1887, and made no claim to the property in dispute, and that in the presence of the said Wm. Dickey it was announced that the lumber in dispute was part of the assets passing into the hands of the assignee, and the said Wm. Dickey stood by and made no claim to said lumber, but said that all the lumber should be put into the hands of practical lumbermen to be worked up for the benefit of all the creditors; and if the jury should further believe that by reason of such acquiescence and assertions the creditors of said Wilkins expended their time and money in carrying out the suggestions of said Dickey, he is now estopped from asserting that the lumber in dispute is the property of the plaintiffs.

Answer: We cannot affirm this point as requested; but the facts, if so found by the jury, are for the jury to say how far they go to rebut the evidence introduced by the plaintiffs, of a conditional sale, and rebut the allegation of fraud. It is a familiar principle that, where parties are present and hear representations made that would be against their interests or an alleged claim, and do not deny the representations or assert their claim, such silence may be regarded as evidence against them.[6]

The defendant's attorneys have presented a form for you, in case you find for the defendant. The amount of damages is placed at $837. Whether that is right or wrong will be for you, we do not say; nor do we say that the verdict would be

Arguments.

right or wrong. The form presented is merely a form. What your verdict shall be is for you to say. But, in case you find for the defendant, you will determine how much damage he is entitled to. There is no special form for the verdict in case you find for the plaintiffs. [With reference to this question of damages, and as to what you should find in case you find for the defendant, to wit, that the defendant is entitled to a return of the property, in addition to that he is entitled to damages during the time that the property was detained. The way to reach the measure of damages would be the interest on what you find to have been the value of the timber, during the time that it was out of possession of the defendant and up to the present time. You find what the value of the timber was and compute the interest up to this time, and it would be the measure of the damages, in case you find in favor of the defendant.] [7]

The jury rendered a verdict in favor of the defendant, and that the goods described in the writ be returned to him, with $731.80, damages for detention, and with costs. A rule for a new trial having been discharged, judgment was entered, when the plaintiffs took this appeal assigning for error :

1–3. The portions of the charge embraced in [ ] [1 to 3]
4. The answers to the defendant's first point.[4]
5. The portion of the charge embraced in [ ] [5]
6. The answer to the defendant's second point.[6]
7. The portion of the charge embraced in [ ] [7]
8, 9. The refusal of the plaintiffs' offers.[8 9]

*Mr. G. A. Jenks* (with him *Mr. J. H. McCain* and *Mr. M. F. Leason*), for the appellants.

Upon the first assignment, counsel cited : Ritter v. Brendlinger, 58 Pa. 68, 70; Kent's App., 87 Pa. 167; Knowles v. Lord, 4 Wh. 500; Foulke v. Harding, 13 Pa. 245; Fulton's Est., 51 Pa. 211; Morris's App., 88 Pa. 368, 382; Krause v. Commonwealth, 93 Pa. 421; Haak v. Linderman, 64 Pa. 501.

*Mr. Joseph Buffington* and *Mr. W. D. Patton* (with them *Mr. Orr Buffington*), for the appellee.

OPINION, MR. JUSTICE GREEN :

The learned court below, in a very clear and impartial charge to the jury, carefully explained to them that the defendant was the assignee, for the benefit of creditors, of G. W. Wilkins; and that, as such, he was "the direct representative of Wilkins. He stands, as it were, in Wilkins's shoes; and we may say, further, which we are really requested to do in one of the points, that the remedy against him is the same and the rights of Houston are the same, as would be the remedies and rights with respect to Wilkins. They stand together; he, representing Wilkins, is subject to the like questions that Mr. Wilkins would be with respect to this property." The first and second points submitted by the plaintiffs, embodying the same ideas, were affirmed without qualification. At considerable length, and in precise language, the court, in the general charge, explained to the jury that if the contract between the plaintiff and Wilkins was as the plaintiffs alleged it to be, a conditional contract, reserving the title in the plaintiffs until the notes were paid, the complete ownership of the lumber would not pass to Wilkins until the money was paid. We do not think it possible the jury could have misunderstood the meaning of the court upon this subject.

The first assignment of error, selecting a single expression from the charge, to the effect that, even if such a conditional contract as was set up by the plaintiffs was the real contract of the parties, it would not have been binding as against other creditors or innocent purchasers, complains of that as error; and the argument in support of it is conducted upon the theory that the court instructed the jury, in this sentence of the charge, in contradiction to their answer to the plaintiffs' second point, and practically took from the plaintiffs the benefit of the other portions of the charge, because there were other creditors, but who claimed only through the assignee. It is true, there were other creditors of the assignor, but this was in no sense a contest between them and the plaintiffs. What was said by the court in the sentence complained of was perfectly sound law, and the court cannot be convicted of error because of its utterance. If the court had said or intimated that, as between creditors claiming through the assignee and the plaintiffs, the conditional sale alleged by the plaintiffs was void, it

Opinion of the Court.

would have been error. But no such idea was expressed, in either the language complained of or in any other part of the charge. On the contrary, the exact opposite of this was repeatedly declared to the jury.

The second assignment cannot be sustained, unless the court submitted to the jury a fact of which there was no evidence. But, in point of fact, Wilkins, Hooks, and McGregor testified that the plaintiffs' lines were taken off, and Wilkins's lines were put on. Hooks said he took off the plaintiffs' lines and put on those of Wilkins, and that this was done early in the spring, soon after the timber was brought to Peart's eddy; and he further said he took the lines to Wilkins's property, and there tabbed them in the name of Collins, McCain & Co. McGregor testified that he helped Hooks to take off the lines; that they were taken away to the boat yard and were tabbed, and he took them in that condition from the boat yard to the depot, and the next day he did not see them there. It cannot be said there was no evidence that the plaintiffs' lines had been removed from the timber and sent to them. As there was no denial that they had been received, on the part of the plaintiffs, some inference would have been justified that they reached their destination; but all that the court charged was to leave it to the jury to say whether the ropes had been sent home, and, if that were so, whether that was notice to the plaintiffs that their timber had undergone some change, and whether, as careful business men, if the timber was still theirs according to their theory, they ought not to come down and look after it to see whether it had been used or appropriated by Wilkins. Certainly there was no error in this. It was only a question as to what a prudent man would do in such circumstances, and it was left entirely to the jury to decide.

The third and fourth assignments. The court below did not charge, either in answer to the defendant's first point, or anywhere else, that there was a written contract between the parties, and that it was the best evidence. In answer to the defendant's first point, which was altogether hypothetical and depended upon the belief of the jury, the court affirmed the point, "if the jury find the fact that there was a written contract." In the charge, the court had very fully and with entire correctness reviewed the contentions of the parties on the

question whether there was a written contract. Two quite important writings had been given in evidence, both dated on April 29, 1887, when the sale was consummated. One was an entry made in the pass-book of the plaintiffs, and produced by them on notice and subpœna, in these words:

"April 28th, '87.  G. W. Wilkins bought of Collins, Darrah, Dickey & Co., 95,457 cubic feet of pine timber, at 16 cents per foot.  Amount, $15,273.12; interest, $152.72; making $15,425.85.  Cash, $5,141.94; four months note, $5,141.94; six months' note, $5,141.96; making total, $15,425.84."

The other was the receipt given by the plaintiffs to Wilkins on the same day, as follows, viz.:

"Brattonville, April 29th, 1887.  Received from G. W. Wilkins his check for $2,000; check for $3,141.94; four months' note for $5,141.94; six months' note for $5,141.96; total, $15,425.85, in full for 95,457 cubic feet of pine timber, at 16 cents a foot, $15,273.12; and discount on six months' note, $152.72; making altogether, $15,425.85.

"E. H. DARRAH."

Although these two papers were in evidence, and although of themselves alone, and in the absence of other testimony, they do express the full and complete terms of a contract in writing, the court did not say to the jury that they did constitute the actual contract of the parties. On the contrary, they left it to the jury to say, on all the evidence in the cause, verbal and written, what the real contract was. The plaintiffs were allowed to give, and did give, all the verbal testimony they had to offer as to what the contract was; and the court left it all, together with the writings, in a way most fair and impartial in all respects, to the jury, to say what the actual contract of the parties was. To have refused to give any effect to the writings, or to allow the jury to do so, would have been the gravest error. Everything that the plaintiffs could ask was accorded to them, and every opportunity to have all their oral testimony considered, in determining what the contract was, was allowed. Very much other testimony was given entirely inconsistent with the plaintiffs' theory that they were to remain the owners of the timber until the purchase money was all paid, and it is not to be wondered at that the jury failed to take that view of the case. What the court said as to the

Opinion of the Court.

effect of the contract, if it was in writing, upon the parol testimony tending to change it, was entirely correct. The third and fourth assignments are not sustained.

The same remarks are true as to the fifth and sixth assignments. The court refused to affirm the second point of the defendant, requiring an instruction that the plaintiffs would be estopped, by force of the facts stated in the point, from alleging a conditional sale, but left the whole matter to the jury to say how far the facts alleged in the point tended to rebut the plaintiffs' theory of such a sale. As the facts in question were strikingly inconsistent with the contention of the plaintiffs that they were the owners of the timber after the sale, the action of the court was as favorable to the plaintiffs as they could ask. No question was raised by the point and answer as to any other lumber than that which was in dispute.

Seventh assignment. As the timber was delivered to the plaintiffs, and the defendant pleaded property, the court correctly charged the jury that, if they found for the defendant, he was entitled to a return of the property, and also to damages for the detention. They were also instructed that the measure of damages would be the interest on the value of the timber during the time it was out of the defendant's possession. On the trial, plaintiffs admitted the quantity taken under the writ, and proof was offered of a sale of part of the timber at eighteen cents a foot, which was two cents a foot more than the price at which the timber was bought. We cannot say that an allowance of damages for the detention, by way of interest on the value, was erroneous. In an action on the bond, any difficulty from this source can be prevented, if necessary.

The eighth and ninth assignments are without merit, and are not sustained. The witness was immediately examined, and testified without limitation as to everything said between Wilkins and himself.

Judgment affirmed.